## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEBORAH TANZYUS,**    \*

                                     \*

                   **Plaintiff,**    \*

                                       \*

          **vs.**    \*     **Civil Action No. 05-cv-01849 (JR)**

                                       \*

**ELI LILLY AND COMPANY,**    \*

                                       \*

                  **Defendant**.    \*

\* \* \* \* \* \* \* \* \* \* \* \*\* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT ELI LILLY AND COMPANY'S
## <u>MOTION FOR SUMMARY JUDGMENT</u>

       Pursuant to Fed.R.Civ.P. 56 (c), Defendant Eli Lilly & Company ("Lilly") moves for summary judgment as to all of Plaintiff's claims on the ground that there is no genuine issue as to any material fact raised by Plaintiff's claims and Lilly is entitled to judgment as a matter of law. Specifically, Lilly is entitled to summary judgment because Plaintiff's claims are barred under Indiana's statute of repose.  Moreover, Plaintiff cannot prove that she was exposed to diethylstilbestrol. Finally, even if Plaintiff could establish that she was exposed to diethylstilbestrol, she cannot establish that it was manufactured by Eli Lilly and Company, as required by Indiana law, applicable in this case**.**

       WHEREFORE, as set forth more fully in Lilly's accompanying Memorandum in Support, defendant Eli Lilly and Company respectfully requests that the Court enter an Order granting summary judgment in favor of Lilly and against Plaintiff and for such other and further relief as the Court deems just and proper.

2049019v1

Respectfully submitted,


**SHOOK, HARDY & BACON L.L.P.**


_____/s/ Michelle R. Mangrum_____
Michelle R. Mangrum, D.C. Bar No. 473634
John Chadwick Coots, D.C. Bar No. 461979
Emily J. Laird, D.C. Bar No. 485890
600 14th Street, N.W., Suite 800
Washington, DC  20005-2004
Phone:  (202) 783-8400; Fax: (202) 783-4211

    and

David W. Brooks
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, MO   64108-2613
(816) 474-6550
Fax (816) 421-5547

**ATTORNEYS FOR DEFENDANT
ELI LILLY AND COMPANY**

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEBORAH TANZYUS,**                    \*

                                                         \*

               **Plaintiff,**      \*

                                                         \*

      **vs.**                            \*     **Civil Action No. 05-cv-01849 (JR)**

                                                         \*

**ELI LILLY AND COMPANY,**        \*

                                                         \*

            **Defendant**.    \*

\* \* \* \* \* \* \* \* \* \* \* \*\* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT ELI LILLY AND COMPANY'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This is a products liability action allegedly involving the prescription drug diethylstilbestrol ("stilbestrol" or "DES"), an unpatented synthetic estrogen used for decades to treat a variety of conditions, including the treatment of some types of cancer and some accidents of pregnancy. On September 1, 2005, plaintiff Deborah Tanzyus ("Plaintiff") filed this action against Eli Lilly and Company ("Lilly") alleging her mother, Marilyn Johnston, ingested DES during her pregnancy with Plaintiff in 1955-56 and that, as a result, Plaintiff sustained a number of injuries, including uterine and cervical malformations, miscarriages, an ectopic pregnancy and infertility. Lilly now moves for summary judgment because the undisputed facts and relevant law establish that Plaintiff's claims fail as a matter of law.

First, Plaintiff's claims, brought approximately 50 years after she alleges her mother was prescribed, received and ingested DES, are barred under Indiana's 10 year statute of repose.

Second, Plaintiff cannot establish that she was ever exposed to DES *in utero*. Plaintiff has identified no medical, pharmacy, or other records from her mother's pregnancy with

2049150v1

her establishing that her mother took DES.  Plaintiff's mother testified that she does not know what she took during her pregnancy with Plaintiff, only that she took "something" because she was spotting.  Dr. Tom Wachob, Jr., the physician who treated Plaintiff's mother during her pregnancy, testified that he has no recollection of treating Mrs. Johnston or of prescribing any medication for her and that it would be speculation for him to testify what medication – if any – he would have prescribed 50 years ago to treat a patient spotting during pregnancy.  Because Plaintiff cannot produce admissible evidence of DES exposure, Lilly is entitled to judgment as a matter of law as to all of Plaintiff's claims on this basis alone.

Third, even if Plaintiff could somehow establish that she was exposed to DES – which she cannot – Indiana law[1] requires that Plaintiff offer admissible evidence establishing that Lilly manufactured the DES Plaintiff claims her mother ingested.  Plaintiff has identified no medical, pharmacy, or other records establishing that Lilly manufactured any medication her mother allegedly ingested during her 1955-56 pregnancy.  Moreover, Plaintiff has not identified any witness who can testify, based on personal knowledge, that Lilly – as opposed to multiple other manufacturers of DES – manufactured any medication her mother allegedly ingested during this pregnancy.  Therefore, Plaintiff cannot raise a question of fact for trial as to whether Lilly manufactured any DES Plaintiff claims Mrs. Johnston ingested, and Lilly is entitled to judgment as a matter of law as to all of Plaintiff's claims on this basis as well.

## STATEMENT OF UNCONTROVERTED MATERIAL FACTS

1.     Plaintiff alleges her mother, Marilyn Johnston, ingested DES during her pregnancy with Plaintiff in 1955-56 and that, as a result, Plaintiff sustained a number of injuries,

---

[1]     As set forth below, Indiana substantive law applies in this case.

2049150v1

including uterine and cervical malformations, miscarriages, an ectopic pregnancy and infertility.[2]

(Plaintiffs' Complaint, ¶¶ 3,4; Plaintiff's Answers to Defendant's First Set of Interrogatories,

Nos. 12 & 13, excerpts attached hereto as Exhibit 1.)

2.     Plaintiff's mother, Marilyn Johnston ("Mrs. Johnston"), was pregnant with Plaintiff in 1955-56 in Kokomo, Indiana. (Exhibit 1, No. 11; Complaint, ¶ 3.)

3.     Plaintiff alleges that Dr. Tom Wachob, Jr. ("Dr. Wachob") prescribed DES for her mother during her pregnancy with Plaintiff. (Exhibit 1, No. 17.)

4.     Prior to 2005, in response to Plaintiff's questions, Mrs. Johnston told Plaintiff that she did not recall taking anything during her pregnancy with Plaintiff. (Marilyn Johnston depo., excerpts attached hereto as Exhibit 2, p. 98, line 11 through p. 99, line 1; p. 101, lines 12-18; p. 102, lines 12-17.)

5.     Mrs. Johnston testified that it was not until 2005 that she suddenly remembered taking "something" because she was spotting during her pregnancy with Plaintiff. (*Id.*, p. 99, lines 8-20.)

6.     Mrs. Johnston testified that when she did recall in 2005 taking "something" during her pregnancy with Plaintiff, she did not recall anything specific about the pill, stating: "At that time I didn't even remember what it was. . . ." (*Id.*, p. 99, line 21 through p. 100, line 4.)

---

[2]     For purposes of this motion only, Lilly does not contest Plaintiff's allegations and testimony cited herein, including her allegations that she sustained injuries she alleges were caused by DES exposure. However, if this action is not disposed of by this motion for summary judgment, Lilly will present evidence at trial and contend, among other things, that Plaintiff has failed to prove that her alleged DES exposure caused her to sustain any injuries. In particular, Lilly will present expert testimony, evidence from the medical records, and other strong evidence that Plaintiff's medical problems are unrelated to DES exposure.

3

7.      Dr. Wachob did not tell Mrs. Johnston what he allegedly prescribed for her during her pregnancy with Plaintiff and she did not ask.  (*Id*., p. 64, line 15 through p. 65, line 6;  *see also* p. 68, lines 16-20; p. 76, lines 9-12.)

8.      Mrs. Johnston testified that she told Dr. Wachob "when he suggested I take this pill, *whatever it was*, I said I don't want to take Thalidomide."  (*Id*., p. 99, line 21 through p. 100, line 8.) (emphasis added.)

9.      Mrs. Johnston testified that she may have first heard of DES through *Plaintiff* and that Plaintiff is the *only* person with whom she has discussed DES, the only exception being Plaintiff's lawyers.  (*Id*., p. 113, lines 1-19;  *see also* p. 102, line 18 through p. 103, line 4.)

10.     Mrs. Johnston testified that the drug she allegedly took during her pregnancy with Plaintiff was probably a white pill, but she does not remember for certain.  (*Id*., p. 67, lines 1-6;  p. 115, lines 13-15.)

11.     Mrs. Johnston does not recall any other details about the pill she claims to have taken during her pregnancy with Plaintiff.  (*Id*., p. 67, line 1 through p. 68, line 6;  *see also* p. 115, lines 7-15.)

12.     Mrs. Johnston testified that she was shown a book of pills by Plaintiff's counsel, but "I couldn't point out which pill it was."  (*Id*., p. 114, line 19 through p. 115, line 15.)

13.     Mrs. Johnston testified that she knows what company manufactured the pill she claims to have taken during her pregnancy with Plaintiff only because "[t]he lawyer said it was Eli Lilly."  (*Id*., p. 115, lines 16-21;  *see also* p. 18, lines 4-13.)

14.     Mrs. Johnston was never shown what, if anything, Dr. Wachob referenced or consulted regarding the drug she says she took while pregnant with Plaintiff.  (*Id*., p. 69, lines 3-7.)

15.     Plaintiff claims that her mother filled DES prescriptions at Hook's Pharmacy, 104 N. Main Street, Kokomo, Indiana ("downtown Hook's").  (Exhibit 1, No. 20.)

16.     Plaintiff was born on June 8, 1956 in Bloomington, Indiana.  (*Id*., No. 1.)

17.     Plaintiff admits she does not know who manufactured the DES to which she claims she was exposed.  (Plaintiff's Depo., excerpts attached hereto as Exhibit 3, p. 238, lines 7-10.)

18.     Mrs. Johnston testified that Dr. Wachob never told her who manufactured the drug she claims to have taken during her pregnancy with Plaintiff.  (Exhibit 2, p. 68, line 21 through p. 69, line 2.)

19.     Dr. Wachob does not recall Mrs. Johnston.  (Thomas Wachob Jr., M.D. depo., excerpts attached hereto as Exhibit 4, p. 7, lines 12-18; p. 28, lines 16-18.)

20.     Dr. Wachob does not recall ever prescribing Mrs. Johnston DES.  (*Id*., p. 12, lines 1-5;  p. 25, lines 16-20;  p. 28, lines 19-22.)

21.     Dr. Wachob did not specify a manufacturer when prescribing diethylstilbestrol in the 1950s.  (*Id*., p.17, lines 16-19.)

22.     Dr. Wachob provided plaintiff's counsel a statement which states in part:

"3.     I recall from my own independent recollection that obstetricians commonly prescribed Diethylstilbestrol ("DES") in the 1950s for the prevention of accidents of pregnancy, threatened miscarriages, spotting, or prior history of miscarriages as that was the standard of care for obstetricians at that time.  Although I do not recall Marilyn Johnston as a patient, it was my custom and practice to prescribe DES to pregnant women with these indications."

5

(Statement of Dr. Tom Wachob, Jr., M.D., attached hereto as Exhibit 5.)

23.    Dr. Wachob testified that this paragraph of his statement constitutes "speculation" on his part. (Exhibit 4, p. 41, line 20 through p. 42, line 14.)

24.    Dr Wachob testified that there was no constellation of symptoms that would have lead him to prescribe DES as a matter of course in the 1950s. (*Id.*, p. 39, line 23 through p. 40, line 4.)

25.    Keith Johns provided plaintiff's counsel an affidavit stating that he worked at the downtown Hook's pharmacy in Kokomo, Indiana. (Affidavit of Keith Johns, R.PH., attached hereto as Exhibit 6.)

26.    Mr. Johns did not begin working at the downtown Hook's pharmacy until more than two months after Plaintiff was born. (*Id.*, ¶2; *see also* Keith Johns depo., excerpts attached hereto as Exhibit 7, p. 8, lines 1-24.)

27.    Mr. Johns testified that he does not know what brands of diethylstilbestrol the downtown Hook's pharmacy stocked before he began working there. (Exhibit 7, p. 17, lines 13-22.)

28.    William Graff provided Plaintiff's counsel a statement indicating that he worked as a pharmacy clerk and as a pharmacist for over 40 years in Kokomo, Indiana beginning in 1945. (Statement of William Graff, R.PH., attached hereto as Exhibit 8.)

29.    Mr. Graff never worked at the downtown Hook's pharmacy. (*Id.*)

30.    Mr. Graff graduated from Purdue University's School of Pharmacy in 1957 – the year after plaintiff's birth. (*Id.*)

31.    More than 100 companies manufactured DES in dosage sizes indicated for use in pregnancy in 1955-56.  (*See* 1955 and 1956 Drug Topics Redbooks; 1954-55, 1955-56 and 1956-57 American Druggist Bluebooks, excerpts attached hereto as Exhibit 9.)

## LAW AND ARGUMENT

### I.    SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the moving party is entitled to judgment as a matter of law based on the undisputed material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action."  *Id.* at 327.

The party moving for summary judgment bears the initial responsibility of identifying the documents and testimony which demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 325.  Once the moving party has shown the absence of a genuine issue of material fact, the burden shifts to the non-moving party to set forth affirmative evidence and specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-250 (1986).  The non-moving party must do more than express doubt as to the truth of the moving party's factual submissions, and must show "concrete evidence from which a reasonable juror could return a verdict in his favor."  *Id.* at 256.  Showing "some metaphysical doubt" as to the material facts, making conclusory allegations or unsubstantiated assertions, or by offering only a "scintilla" of evidence is not sufficient to satisfy the non-movant's burden.  *See Id.* at 252;  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

2049150v1

II.    __INDIANA'S STATUTE OF REPOSE BARS PLAINTIFF'S CLAIMS__

    A.    __Indiana Law Applies to the Substantive Issues of This Case.__

        Federal jurisdiction in this case is based on diversity of citizenship between the parties.  Accordingly, in determining what state's substantive law should be applied to the case, this Court is directed to look at District of Columbia choice of law rules.  Courts in the District of Columbia apply a governmental interests approach, which balances the competing interests of the two jurisdictions.  *Nix v. Hoke*, 139 F. Supp. 2d 125, 131 (D.D.C. 2001).  In determining which jurisdiction has a greater interest in having its laws apply, the District of Columbia considers four factors: (1) the place of the injury; (2) the place where the conduct occurred; (3) the place where the relationship between the parties is centered; and (4) the domicile of the parties.  *Id*. at 131-132.  Weighing these factors in this case demonstrates that Indiana law applies to the substantive issues of this case.

        Indiana is the place of Plaintiff's alleged injury, the place where the alleged tortious conduct occurred and the place where the alleged relationship between the parties is centered.  Specifically, Plaintiff's mother was pregnant with her in Indiana.  (*See* SOF, ¶2.)  Plaintiff alleges that her mother was prescribed DES, purchased DES and ingested DES in Indiana.  (*Id.,* at ¶¶1, 2 & 15.)  Finally, Plaintiff alleges she was exposed to DES *in utero* in Indiana.  (*Id*.)  Accordingly, an analysis of these three factors requires application of Indiana law.

        The fourth factor considered by District of Columbia courts, the domicile of the parties, also requires the application of Indiana law.  Plaintiff is currently domiciled in Maryland.  (Exhibit 1, No. 2.)  Lilly is incorporated and has its principal place of business in Indiana.  In light of the fact that Plaintiff's claim are centered in the state of Indiana and Lilly's principal place of business is also located in Indiana, that state has a greater interest in having its law applied than Maryland or the District of Columbia.

Under the governmental interests approach applied by courts in the District of Columbia, Indiana substantive law applies in this case.

**B.    Indiana's Statute of Repose is Substantive Law and Applies to Plaintiff's Claims.**

Where the substantive law of another state applies to a claim pending in the District of Columbia, a District of Columbia court will apply that state's time limitation if it is substantive in nature. *See Ekstrom v. Value Health, Inc*., 68 F.3d 1391 (D.C.Cir. 1995) (applying Connecticut limitations period); *Int'l Technologies Integration, Inc. v. The Palestinian Liberation Org*., 66 F.Supp.2d 3, 10-11, 15 (D.D.C. 1999) (applying Virginia limitations period). Indeed, in making its determination that the Connecticut limitation period at issue in *Ekstrom* was substantive in nature, the D.C. Circuit relied on Connecticut precedent.  As discussed below, because Indiana courts characterize § 34-20-3-1 as substantive law, D.C. courts must defer to their interpretation and also characterize it as substantive law.

Indiana courts and other state courts have specifically held and are in agreement that Indiana's statutes of repose, including Ind. Code § 34-20-3-1, are substantive law.  *See Kissel v. Rosenbaum*, 579 N.E.2d 1322, 1326-27 (Ind. App. 1 Dist., 1991) ("A statute of repose constitutes a substantive definition of rights rather than a procedural limitation provided by a statute of limitation.") (citation omitted); *Berns Const. Co., Inc. v. Miller*, 491 N.E.2d 565, 570 (Ind.App. 1 Dist., 1986) ("These statutes are statutes of repose constituting a substantive definition of one's rights, rather than a procedural limitation. . . . Indeed . . . insomuch as the statute is substantive, no right exists after the end of the prescribed period.  Thus, it is not merely the remedy that is curtailed but the very right to bring the cause of action.") (citations omitted); *Lawson v. Valve-Trol Co*., 610 N.E.2d 425, 427 (Ohio App. 9 Dist., 1991) ("The Indiana courts have . . . determined that statutes of repose are substantive.") (citations omitted).

### C.    The Indiana Statute of Repose Bars Plaintiff's Claims

Indiana substantive law, including Ind. Code § 34-20-3-1,[3] applies to and bars all of Plaintiff's claims[4].  Plaintiff claims her mother was prescribed, purchased and ingested DES in Indiana during her pregnancy with Plaintiff in 1955 and 1956.  (SOF, ¶¶1, 2 & 15.)

Indiana Code § 34-20-3-1 applies to product liability claims and states:

> Sec. 1.(a)    This section applies to all persons regardless of minority or legal disability.  Notwithstanding IC 34-11-6-1, this section applies in any product liability action in which the theory of liability is negligence or strict liability in tort.

> (b)  Except as provided in section 2 of this chapter, a product liability action must be commenced:

---

[3]    Ind. Code § 33-1-1.5-5 (as discussed below) was recodified, without substantive change, at Ind. Code § 34-20-3-1.  *Degussa Corp. v. Mullens*, 744 N.E. 2d 407, 410, n.4 (Ind. 2001).

[4]    Plaintiff's breach of warranty (Count III) and misrepresentation (Count IV) claims are simply negligence claims framed here as separate legal theories.  Regardless how Plaintiff has characterized her claims, all of the claims are premised on an alleged failure to warn.  (*See, e.g.,* ¶¶15, 2, 22 of Plaintiff's Complaint.)  As such Plaintiff's breach of warranty and misrepresentation claims are merged with the underlying products liability claims and are thus barred by the statute of repose as well:

> "[A]n action for damages resulting from the alleged failure of a manufacturer or seller to warn a user of its product's latently defective nature is certainly a product liability action based on a theory of negligence and, ultimately, is one in which the claim is made that the damage was caused by or *resulted from* the manufacture, construction or design of the product. *See* Ind. Code § 33-1-1.5-2 . . . . The Product Liability Act expressly applies to all product liability actions sounding in tort, including those based upon the theory of negligence, and the legislature clearly intended that *no* cause of action would exist on any such product liability theory after ten years."

*Avery v. Mapco Gas Products, Inc.,* 18 F.3d 448, 454 (7th Cir. (Ind.) 1994) (*quoting Dague v. Piper Aircraft Corp.,* 418 N.E.2d 207, 212 (Ind. 1981) (emphasis in original)). *See also In re Norplant Contraceptive Prod. Liab. Lit.,* 955 F.Supp. 700, 709 (E.D.Tex. 1997) (applying the learned intermediary doctrine to all of plaintiff's causes of action because the gravamen of each claim was defendant's alleged failure to adequately warn of or disclose the severity of Norplant's side effects).

10

> (1) within two (2) years after the cause of action accrues; or
>
> (2) within ten (10) years after the delivery of the product to the initial user or consumer.
>
> However, if the cause of action accrues at least eight (8) years but less than ten (10) years after that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues.

Indiana's statute of repose "serves the public policy concerns of reliability and availability of evidence after long periods of time, and the ability of manufacturers to plan their affairs without the potential for unknown liability. . . . It provides certainty and finality with a bright line bar to liability ten years after a product's first use." *McIntosh v. Melroe Co., a Div. of Clark Equipment Co., Inc*., 729 N.E.2d 972, 980 (Ind. 2000) (citation omitted). Here, as in *McIntosh*, the statute of repose "bars any claim for injury that occurs more than ten years after delivery to an initial user or consumer." *Id*., at 983.

The phrase "delivery of the product to the initial user or consumer" has been interpreted by Indiana courts to mean that the ten-year limitation period begins to run when the allegedly defective product is *delivered* to the *initial* user, regardless of how the Plaintiff is eventually injured. *See, e.g., Dague v. Piper Aircraft Corp*., 418 N.E.2d 207 (Ind. 1981); *Ferguson v. Modern Farm Systems, Inc.*, 555 N.E.2d 1379 (Ind. Ct. App. 1990); *MacIntosh v. Melroe Co., a Div. of Clark Equipment Co., Inc*., 729 N.E. 2d 972, 983 (Ind. 2000). For example, in *Ferguson*, Plaintiff sued the manufacturer, installer and owner of a grain storage bin for injuries sustained when he fell off a ladder affixed to the side of the bin. The manufacturer delivered the grain bin components to the installer on September 4, 1974. Plaintiff was injured on October 27, 1984, and filed suit on March 12, 1985. Relying on the plain meaning of § 33-1-

11

1.5-5, as expressed by the Indiana legislature, the court affirmed the trial court's order of

summary judgment in favor of the defendants:

> Applying the plain meaning of the statute to the given facts of this case, the statute of repose commenced running when [the manufacturer] <u>delivered</u> the grain bin components to [the installer] on September 4, 1974. [The installer] is the initial user or consumer because he was the first entity to utilize the component when constructing the grain bin. The injury of October 27, 1984 occurred more than ten years after that delivery. Unfortunately, lines must be drawn somewhere, and this line was so drawn by the legislature as to bar [Plaintiffs'] claims even though by a narrow margin.

555 N.E.2d at 1586 (emphasis in original).[5]

Moreover, one Indiana court has specifically considered and applied Indiana's

statute of repose in a DES case. In *McDaniel v. Eli Lilly and Company*, Cause No. 45D01-9410-

CT-1210 (1995), plaintiff claimed injury as a result of his mother's ingestion of DES in 1953-54,

1956-57 and 1959-60. (*See* affidavit of Michelle R. Mangrum, attached hereto as Exhibit 10; Eli

Lilly and Company's Memorandum in Support of Motion for Summary Judgment in *McDaniel*,

attached hereto as Exhibit 11, at p.1.) Lilly sought summary judgment on the ground that the

alleged delivery and use of DES occurred more than 34 years prior to plaintiff bringing suit and, as

a result, plaintiff's suit was barred by the 10 year repose period set forth in Ind. Code § 33-1-1.5-

5. (*Id*. at p. 4.) The court agreed and granted summary judgment in Lilly's favor, specifically

holding that " . . . Plaintiff's Complaint is barred by the statute of repose." (*See* Order granting

Summary Judgment in *McDaniel*, attached hereto as Exhibit 12.) The same rationale applies in

the present case.

---

[5]     In 1989, the legislature and the Indiana Supreme Court drew a different line as to application of the statue of repose in cases involving protracted exposure to asbestos. In such cases, the ten-year statute of repose does not apply. *See* Ind. Code §34-20-3-2; *Colvalt v. Carey Canada, Inc.,* 543 N.E.2d 382 (Ind. 1989).

In this case, § 34-20-3-1 bars Plaintiff's claims against Lilly. Plaintiff filed this action in 2005, alleging that she sustained injuries as a result of *delivery* to her mother, and her mother's *use* of, an allegedly defective product — which Plaintiff claims was DES — approximately *50 years ago*, in 1955-56. Under the plain language of § 34-20-3-1, as decreed by the Indiana legislature, delivery of the drug to Plaintiff's mother — the initial user — triggered the running of the 10 year limitation period. Because Plaintiff failed to file her action within 10 years from the date of the last possible delivery the drug to her mother during her pregnancy with Plaintiff, 1956, Plaintiff's claims are now time-barred.[6]

## III.    PLAINTIFF CANNOT PROVE THAT HER MOTHER INGESTED DES DURING HER PREGNANCY WITH PLAINTIFF

### A.    Under Indiana Substantive Law, Plaintiff Must Prove That She Was Exposed to DES in Utero

Under Indiana law, a plaintiff must prove that she was <u>exposed</u> to the product she alleges caused her injuries. *See Outlaw v. Erbrich Prods. Co., Inc.*, 777 N.E.2d 14, 29 & 30 n.8 (Ind. Ct. App. 2003); *Cornette v. Searjeant Metal Prods., Inc.*, 258 N.E.2d 652, 663 (Ind. Ct. App. 1970) (Sharp, J., concurring). Indeed, it is a fundamental principle of tort law in Indiana that before a defendant can be held liable to a plaintiff, the plaintiff must prove that the defendant's acts were the proximate cause of the plaintiff's injuries. *Coffman v. PSI Energy, Inc.*, 815 N.E.2d 522, 527 (Ind. Ct. App. 2004) (recognizing proximate causation as an established element in both negligence and products liability causes of action); *U-Haul Int'l, Inc.*

---

[6]    Such a result is also consistent with other courts which have interpreted similar statutes of repose as barring claims for alleged DES-related injuries asserted beyond the time allowed by the statues of repose. *See, e.g., Mathis v. Eli Lilly and Company,* 719 F.2d 134 (6th Cir. 1983) (Tennessee's 10-year statute of repose not unconstitutional and bars Plaintiff from proceeding on her claims allegedly arising out of her mother's ingestion of DES in 1955); *Brown v. Eli Lilly and Company,* 690 F. Supp. 857 (D. Neb. 1988) (Nebraska's 10-year statue of repose not unconstitutional and bars Plaintiff from proceeding on her claims brought more than ten years after her mothers ingestion of DES in 1960).

*v. Nulls Machine & Mfg. Shop*, 736 N.E.2d 271, 281 (Ind. Ct. App. 2000) ("We note that proximate cause is also an essential element of not only a claim of strict liability, but also a claim sounding in negligence.").  In the absence of evidence that the <u>defendant's</u> <u>product</u> caused the plaintiff's alleged injury, a plaintiff cannot meet her burden of proving proximate cause.  *See Outlaw*, 777 N.E.2d at 29 & 30 n.8; *Cornette*, 258 N.E.2d at 64-67; *U-Haul Int'l, Inc.*, 736 N.E.2d at 284.

### B.    Plaintiff Has No Admissible Evidence That Her Mother Took DES During Her Pregnancy With Her

In this case, Plaintiff cannot meet her burden of proof that Mrs. Johnston ingested DES during her pregnancy with Plaintiff.  Plaintiff has identified no one with personal knowledge of what, if anything, was prescribed to Mrs. Johnston during her pregnancy with Plaintiff.  Dr. Wachob, who Plaintiff alleges prescribed DES to her mother, testified he does not recall Mrs. Johnston and does not recall ever prescribing DES to Mrs. Johnston.  (SOF, ¶¶19, 20.)

Plaintiff's only purported "evidence" that her mother took *something* during her pregnancy with her consists solely of Mrs. Johnston's testimony.  However, Mrs. Johnston has no personal knowledge that she ingested DES during her pregnancy with Plaintiff.  Up until 2005 – the year Plaintiff filed her lawsuit – Mrs. Johnston actually <u>denied taking DES</u> or any medication.  (SOF, ¶¶4-6.)  Given Mrs. Johnston's past and repeated denial of taking DES, it is also not surprising that Plaintiff has produced no medical, pharmacy or other records showing that Mrs. Johnston took DES during her pregnancy with Plaintiff.

Mrs. Johnston's sudden "memory" in 2005 of taking "something" does not establish any personal knowledge of taking DES.  Mrs. Johnston testified she remembers only that she took "a pill" that was "probably white."  (SOF, ¶10.)  She testified she does not recall

14

any other details of the pill. (SOF, ¶11.) Mrs. Johnston testified that Dr. Wachob never told her what he prescribed for her during her pregnancy with Plaintiff and she did not ask. (SOF, ¶7.) Even if Mrs. Johnston's sudden memory is admissible on whether she really did take a "probably white" pill during her pregnancy, there is absolutely no admissible evidence that that the pill was DES.

Mrs. Johnston's testimony is based solely on what Plaintiff and Plaintiff's attorneys told her about the "probably white" pill she allegedly ingested. Mrs. Johnston admitted in her deposition that she may have first heard of DES through Plaintiff and that Plaintiff is the only person with whom she has discussed DES, other than Plaintiff's lawyers. (SOF, ¶9.) Mrs. Johnston's testimony is not based in personal knowledge and thus, cannot be considered on summary judgment. *See Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 90 (D.D.C. 2006).

In an apparent attempt to remedy Plaintiff's inability to establish that her mother took DES while pregnant with her, Plaintiff has obtained a statement from Dr. Thomas Wachob, Jr. in which he states in part:

> "3.    I recall from my own independent recollection that obstetricians commonly prescribed Diethylstilbestrol ("DES") in the 1950s for the prevention of accidents of pregnancy, threatened miscarriages, spotting, or prior history of miscarriages as that was the standard of care for obstetricians at that time. Although I do not recall Marilyn Johnston as a patient, it was my custom and practice to prescribe DES to pregnant women with these indications."

(Exhibit 5.)

However, Dr. Wachob testified in his deposition that paragraph 3 of his statement constitutes "speculation" on his part. (SOF, ¶23.) In fact, Dr. Wachob specifically testified that

15

there was <u>no</u> constellation of symptoms that would have lead him to prescribe DES <u>as a matter of course</u>:

> "Q      My question for you is:  Can you say that it is cut and dried that if a woman had presented to you in the 1950s, for example, with one presentation, and that is spotting, can you say that it would have been your standard [of] care to prescribe [DES] for that woman?
>
> A      No, I cannot say that.
>
> Q      Is there any particular constellation of symptoms that a woman might have had in the 1950s that you can sit here today and say I would have prescribed [DES] under those circumstances?
>
> A      I cannot say that either.
>
> Q      Would that be speculative?
>
> A      Yes."

(Exhibit 4, at p. 39, line 26 through p. 40, line 4.)

Succinctly, Dr. Wachob's sworn testimony establishes that there was no set of indications in the 1950s that would have resulted in him prescribing DES as a matter of course. Moreover, Dr. Wachob does not recall ever having Mrs. Johnston as a patient or ever prescribing her DES.  (SOF, ¶¶19, 20.)  As such, Dr. Wachob's testimony is not admissible and cannot salvage Plaintiff's claims.  Because Plaintiff has identified no medical, pharmacy or other records documenting that Mrs. Johnston took DES during her pregnancy with Plaintiff, or any other admissible evidence proving exposure, Plaintiff cannot prove an essential element of her claim.  Lilly is, therefore, entitled to judgment as a matter of law on this basis alone.

### IV.    PLAINTIFF CANNOT IDENTIFY LILLY AS THE SPECIFIC MANUFACTURER OF THE DRUG ALLEGEDLY INGESTED BY HER MOTHER IN 1955-56.

The Supreme Court of Indiana has noted that the "market share" theory of liability ". . . has not been adopted in Indiana."  *City of Gary ex rel. King v. Smith &Wesson*

16

*Corp.*, 801 N.E. 2d 1222, 1245 (Ind. 2003). Accordingly, Plaintiff may not meet her burden by simply identifying Lilly as one of several manufacturers who <u>could</u> have manufactured the product that allegedly caused the injury. As the United States District Court for the Southern District of Indiana noted in *Harris v. AC & S, Inc*., 915 F. Supp. 1420, 1437 (S.D. Ind. 1995) "market share theory [is] an approach which no Indiana court has ever adopted…." Thus, Plaintiff cannot rely on market share to establish her claims against Lilly in this case.

Plaintiff has not identified a single witness who can testify, based on personal knowledge, that the drug Plaintiff's mother claims to have ingested during her pregnancy with Plaintiff was either DES or manufactured by Lilly. Mrs. Johnston testified that Dr. Wachob did not tell her the name of the manufacturer of the drug he prescribed. (SOF, ¶18.) Plaintiff testified that she does not know what company manufactured the drug her mother claims to have taken. (SOF, ¶17.) Moreover, Plaintiff has not identified testimony from any pharmacist or pharmacy personnel from the pharmacy that Mrs. Johnston claims dispensed the drug – based on personal knowledge – establishing that Lilly manufactured it.

In an attempt to overcome the complete lack of manufacturer identification evidence as to the DES Plaintiff claims her mother ingested, Plaintiff obtained a statement from two pharmacists. One pharmacist, Mr. Keith Johns, didn't begin working at the downtown Hook's pharmacy until more than two months *after* Plaintiff was born. (Exhibit 7, at p.8, lines 1-24; *see also* Exhibit 6, at ¶2 (stating that he began working at the Hook's pharmacy on Main Street in Kokomo, Indiana on August 15, 1956 – over two months *after* Plaintiff was born on June 8, 1956.)) Therefore, Mr. Johns cannot testify as to what brand or brands of diethylstilbestrol the managing pharmacist at the downtown Hook's pharmacy ordered and stocked before Mr. Johns began working at the store and during Mrs. Johnston's pregnancy with

17

Plaintiff. (Exhibit 7, at p. 17, lines 13-22.) Mr. Johns likewise cannot testify as to what company manufactured the diethylstilbestrol Plaintiff claims her mother purchased from the downtown Hook's Pharmacy in 1955-56 or that Hook's carried only Lilly's DES when he did work there. (*Id.,* at p.42, line 8 through p.43, line 3.) In fact, according to Mr. Johns's testimony, the downtown Hook's store may have carried Squibb's diethylstilbestrol when he worked there. (*Id.*) Accordingly, Mr. John's testimony is inadmissible and cannot salvage Plaintiff's claims.

Plaintiff also obtained a statement from another pharmacist, William Graff, who has allegedly worked in pharmacies in the Kokomo area as a clerk and as a pharmacist. (Exhibit 8.) Mr. Graff did not work at the Hook's pharmacy on Main Street in Kokomo during Mrs. Johnston's pregnancy with Plaintiff, nor has he *ever* worked in a Hook's pharmacy in the Kokomo area or anywhere else. (*Id.*) Moreover, Mr. Graff's statement indicates he did not even graduate from Purdue University's School of Pharmacy until 1957 - *after* Plaintiff was born. (*Id.*) Therefore, his affidavit is inadmissible and does not support Plaintiff's claims.

In the absence of any testimony or documentary evidence, Plaintiff presumably intends to proceed under the argument that Lilly manufactured what was "probably" a white pill as described by Plaintiff's mother, that it <u>could</u> have been DES and, accordingly, her mother <u>could</u> have ingested Lilly's DES. The burden is on Plaintiff, however, to identify Lilly as the <u>actual</u> manufacturer of the drug and that it was in fact DES that Mrs. Johnston actually ingested. Plaintiff cannot meet her burden by making a statistical argument or by placing Lilly in the universe of possibilities that Mrs. Johnston received Lilly's DES. *See, e.g., Thomas v. St. Joseph Hosp.*, 618 S.W.2d 791 (Tex. Ct. App. 1981) (holding that plaintiff could not identify the particular manufacturer of a product by arguing that, based on statistics regarding the

18

manufacturer's percentage of the relevant market, the manufacturer probably manufactured the product); *Wetzel v. Eaton Corp.*, 62 F.R.D. 22, 28 (D.Minn. 1973) ("The universally recognized doctrine requires that the allegedly defective product be identified as having emanated from, or be charged to, the one sought to be held liable.")  Rather, Plaintiff must prove that Hook's Drugs Pharmacy on Main Street in Kokomo stocked Lilly's DES, that Plaintiff's mother ingested DES *and* that Lilly's DES, as opposed to DES manufactured by one of the more than 100 other companies who manufactured DES at the time (*see* SOF, ¶31.), was used to fill Mrs. Johnston's prescription during her pregnancy with Plaintiff.  Plaintiff has offered no evidence to this effect and, accordingly, Lilly is entitled to summary judgment as to all of Plaintiff's claims on this basis.

## <u>CONCLUSION</u>

Plaintiff's claims are barred by Indiana's statute of repose.  Further, Plaintiff cannot meet her burden of proving that Plaintiff's mother ingested DES, an essential element of Plaintiff's claims.  Finally, Plaintiff cannot establish that, if Plaintiff's mother ingested DES, it was Eli Lilly and Company's DES.  Accordingly, defendant Eli Lilly and Company is entitled to summary judgment on all of Plaintiff's claims.

WHEREFORE, defendant Eli Lilly and Company respectfully requests that the Court enter an Order granting summary judgment in favor of Lilly and against Plaintiff, and granting such other and further relief as the Court deems just and proper.

2049150v1

Respectfully submitted,

**SHOOK, HARDY & BACON L.L.P.**


_____/s/ Michelle R. Mangrum_____
Michelle R. Mangrum, D.C. Bar No. 473634
John Chadwick Coots, D.C. Bar No. 461979
Emily J. Laird, D.C. Bar No. 485890
600 14th Street, N.W., Suite 800
Washington, DC  20005-2004
Phone:  (202) 783-8400
Fax: (202) 783-4211


    and

David W. Brooks
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, MO   64108-2613
(816) 474-6550
Fax (816) 421-5547
**ATTORNEYS FOR DEFENDANT
ELI LILLY AND COMPANY**

20

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that true and accurate copies of the foregoing, including any referenced exhibits, were electronically filed with the Clerk of the Court using the CM/ECF system, this 8th day of September, 2006, which sent notification of such filing to all counsel of record listed below.


Aaron M. Levine
Aaron M. Levine & Associates
1320 19th Street, N.W.
Suite 500
Washington, DC   20036


**ATTORNEYS FOR PLAINTIFF**


___/s/ Michelle R. Mangrum_____
ATTORNEY FOR DEFENDANT
ELI LILLY AND COMPANY

21