# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEBORAH TANZYUS,            )
                            )
       Plaintiff,           )
                            )
    -v-                     ) CAUSE NO.
                            ) 1:05-CV-01849
ELI LILLY AND COMPANY,      )
                            )
       Defendant.           )

The deposition upon oral examination of **THOMAS W. WACHOB, M.D.**, a witness produced and sworn before me, Sally Cekander, RPR, Notary Public in and for the County of Boone, State of Indiana, taken on behalf of the Defendant at the home of Thomas W. Wachob, M.D., 2307 Executive Drive, Kokomo, Indiana, on August 31, 2006, at 9:02 a.m., pursuant to the Federal Rules of Civil Procedure.

**STEWART RICHARDSON & ASSOCIATES**
Registered Professional Reporters
One Indiana Square
Suite 2425
Indianapolis, IN 46204
(317) 237-3773

7

1  would take in a courtroom before a judge and a
2  jury?
3  A  Yes.
4  Q  Okay, great.  Doctor, do you have an understanding
5     that we are here today in connection with a lawsuit
6     that a woman named Debra Tanzyus -- her maiden is
7     Johnston -- she has filed against Eli Lilly and
8     Company claiming that she has been injured as a
9     result of her mother's use of Diethylstilbestrol
10     while her mother was pregnant with her?
11  A  Yes.
12  Q  Okay.  Sitting here today, do you have any
13     recollection of a patient by the name of Marilyn
14     Johnston?
15  A  No.
16  Q  Can you even say, sitting here today, that Marilyn
17     Johnston was a patient of yours in the 1950s?
18  A  Not honestly, no.
19  Q  Okay.  Do you have any recollection of her at all?
20  A  No.
21  Q  Okay.  Do you ever recall treating anyone by the
22     name of Debra Johnston?
23  A  No.
24  Q  Do you have any medical records for any of your
25     patients from the 1955-'56 time frame?

12

1  don't remember Marilyn Johnston as a patient. Let
2  me ask you this: Sitting here today, do you have a
3  recollection of prescribing Diethylstilbestrol to
4  Marilyn Johnston in 1955 and '56?
5  A  No.
6  Q  Sitting here today, do you have a recollection of
7  prescribing Diethylstilbestrol to any patient in
8  the 1955-'56 time frame?
9      MR. LEVINE: Excuse me. Does that mean for
10 any purpose; male, female, the question of
11 lactation, female vaginitis, any purpose?
12     MR. KUCKELMAN: I'm just asking the question,
13 and we can get into that in a little bit.
14 BY MR. KUCKELMAN:
15 Q  My question at this point is, Doctor, sitting here
16 today, do you have any recollection of prescribing
17 Diethylstilbestrol for any patient in the 1955-'56
18 time frame?
19     MR. LEVINE: Hello?
20     MR. KUCKELMAN: Hello?
21     MR. LEVINE: Yeah, you cut out for a moment.
22     MR. KUCKELMAN: I'm sorry I'm going to restate
23 the question one more time.
24 BY MR. KUCKELMAN:
25 Q  Doctor, sitting here today, do you have any

1   don't know.
2   Q  Okay. Do you have any recollection of reviewing
3      information from Eli Lilly and Company in the 1950s
4      about Diethylstilbestrol?
5   A  No.
6   Q  Are you familiar with package inserts for
7      prescription drugs?
8   A  Yes.
9   Q  Can you testify today that in the 1950s you relied
10     on Lilly's package insert in particular when you
11     would have prescribed Diethylstilbestrol?
12  A  No.
13  Q  Do you recall who manufactured Diethylstilbestrol
14     in the 1950s?
15  A  No.
16  Q  Do you recall whether you specified a particular
17     manufacturer when you prescribed, if you
18     prescribed, Diethylstilbestrol in the 1950s?
19  A  No, I did not specify a specific manufacturer.
20  Q  Do you remember how you prescribed
21     Diethylstilbestrol, if you did, in the 1950s?
22  A  No.
23  Q  I think early in your deposition you referred to
24     Diethylstilbestrol as DEZ, and make sure you take
25     that down phonetically pronounced, not D-E-S but

| | | |
|---|---|---|
| 1 | | potential benefits of a drug? |
| 2 | A | I think any good doctor would do that. And I |
| 3 | | tried, yes. |
| 4 | Q | Were there times when a drug presented risks but |
| 5 | | the benefits outweighed the risk so you decided to |
| 6 | | go ahead and prescribe it anyway? |
| 7 | A | Yes. |
| 8 | Q | In terms of Diethylstilbestrol, can you remember |
| 9 | | any particular dosage you would have prescribed in |
| 10 | | the 1950s? |
| 11 | A | No. |
| 12 | Q | Do you remember what discussion you would have had |
| 13 | | with a patient in the 1950s about the drug |
| 14 | | Diethylstilbestrol? |
| 15 | A | No. |
| 16 | Q | Doctor, in the absence of your medical records, can |
| 17 | | you determine whether you prescribed |
| 18 | | Diethylstilbestrol for Marilyn Johnston in 1955 and |
| 19 | | '56? |
| 20 | A | No way. |
| 21 | Q | Have you ever visited with Marilyn Johnston, that |
| 22 | | you can recall, since the 1950s? |
| 23 | A | No. |
| 24 | Q | Doctor, do you have any correspondence that you |
| 25 | | have received from Mr. Levine's office? |

1  involvement in this case?
2  A  It was not my understanding.  It was my hope.
3  Q  Okay.  Why was that your hope?  Did someone tell
4     you that?
5  A  No.  I had absolutely no idea how I could have been
6     of any help to anyone further than stating that I
7     don't remember and didn't know.
8  Q  Okay.  And that's what you've testified today
9     during your deposition.  Is it accurate that you
10    don't remember, for example, the reasons that you
11    would have prescribed Diethylstilbestrol in the
12    1950s?
13 A  That is quite accurate.
14 Q  Okay.
15 A  I have been out of the practice for a long time.
16 Q  And it's accurate that you don't remember
17    Mrs. Johnston as a patient?
18 A  Yes, that's accurate.
19 Q  It's accurate that you don't remember prescribing
20    Diethylstilbestrol for her in the 1955-'56 time
21    frame?
22 A  That is accurate.
23 Q  Okay.
24         MR. KUCKELMAN:  I don't have anything else.
25 CROSS-EXAMINATION

1     particular presentation that a woman had, can you
2     say that it was your custom and practice to use
3     forceps in that circumstance or is that something
4     that's just not that cut and dried?
5 A  I can only say that it was something that I might
6     have done.
7 Q  Right. Let me ask you the same questions about
8     Diethylstilbestrol. In your statement you say that
9     you recall some indications. You say that
10    obstetricians commonly prescribed
11    Diethylstilbestrol in the 1950s for the prevention
12    of accidents of pregnancy, threatened miscarriages,
13    spotting or prior history of miscarriages as that
14    was the standard of care for obstetricians at that
15    time.
16       My question for you is: Can you say that it
17    is cut and dried that if a woman had presented to
18    you in the 1950s, for example, with one
19    presentation, and that is spotting, can you say
20    that it would have been your standard and care to
21    prescribe Diethylstilbestrol for that woman?
22 A  No, I cannot say that.
23 Q  Is there any particular constellation of symptoms
24    that a woman might have had in the 1950s that you
25    can sit here today and say I would have prescribed

40

1      Diethylstilbestrol under those circumstances?
2  A   I cannot say that either.
3  Q   Would that be speculative?
4  A   Yes.
5  Q   You've signed the statement from July 14 and that's
6      a piece of paper that was presented to you already
7      typed out by Mr. Levine's office, correct?
8  A   That's correct.
9  Q   Now that we've had an opportunity to discuss the
10     issues that are involved here, and that is your
11     recollection of your standard -- your custom and
12     practice in the 1950s, is your testimony today that
13     it's not cut and dried and that you cannot say that
14     you would have prescribed Diethylstilbestrol under
15     a certain set of circumstances; is your testimony
16     accurate in that regard?
17 A   Yes, I think so.  I think it's -- I think it's
18     honest.  It wasn't cut and dried and I don't know
19     that I did use it every time these particular
20     symptoms appeared.
21 Q   And to say that you did would be speculation,
22     correct?
23 A   Yes.
24 Q   Now that we've had an opportunity to discuss this
25     today, would you agree that the statement in

1  paragraph three would be speculation with regard to
2  a particular patient?
3       MR. LEVINE:  I'm going to object to the
4  leading question.  The doctor signed it under oath
5  all by himself, and I'm sure that he meant to be as
6  honest and as forthright as possible.  And for you
7  now to say that he was just guessing and stabbing
8  in the dark is quite unfair.
9       MR. KUCKELMAN:  Well, and that's exactly the
10 nature of my question because this was presented to
11 him but now we've had an opportunity to actually
12 discuss this, and so, Doctor, my question is --
13      MR. LEVINE:  You haven't discussed it.  He
14 hasn't retracted anything, and you're accusing
15 him --
16      MR. KUCKELMAN:  I'm not accusing him of
17 anything.
18      MR. LEVINE:  -- hazard statements under oath
19 which is unfair.
20      MR. KUCKELMAN:  No, I'm not accusing him of
21 that.  I'm asking him if now that we've had an
22 opportunity to have a discussion about these
23 issues, if his memory is more clear, and if he
24 would agree that the paragraph in this statement
25 numbered three is speculative.

42

1  BY MR. KUCKELMAN:
2  Q   And that's my question, Doctor.
3          MR. LEVINE:  And I'm going to object.  If you
4      want to ask him to retract the statement, then ask
5      him right out that way.
6          MR. KUCKELMAN:  I'm not going to do that.  I'm
7      just asking him to answer my question.
8  A   Your question was whether or not that part of the
9      statement was accurate?
10 Q   No.  My question is whether that's speculation.
11         MR. LEVINE:  I'm going to ask you to define
12     speculation for him.
13 A   As far as my own use of medication, that is
14     speculation.
15 Q   Okay.
16         MR. KUCKELMAN:  And that answers my question.
17     I don't have any further questions.
18 RECROSS-EXAMINATION
19 BY MR. LEVINE:
20 Q   I think what you're saying is it's speculation
21     whether you gave it to any particular woman on any
22     particular day for any particular indication and
23     even though you have no recollection of a
24     particular incident where you wrote out a
25     prescription, you still recall that when indicated,

46

1    MR. KUCKELMAN: Doctor has counsel here today,
2 so do you want him to read his transcript before
3 he -- to read and sign it or does he want to waive
4 that.
5    MR. FELL: We can waive that.
6    MR. LEVINE: Excuse me, is there another
7 lawyer there?
8    MR. KUCKELMAN: Dr. Wachob has counsel here.
9    MR. LEVINE: Oh, I think I should have been
10 advised of that.
11    MR. KUCKELMAN: I'm sorry, I thought you knew
12 that.
13    MR. LEVINE: Can I ask counsel to identify
14 himself.
15    MR. FELL: My name is John Fell, F-E-L-L. I
16 have practiced here in Kokomo for over 49 years.
17 Dr. Wachob has been a friend and client of mine for
18 a good 25 years.
19    MR. LEVINE: And why did the doctor think he
20 needed a lawyer?
21    MR. KUCKELMAN: You know, we're on the record
22 here. I don't know if this is appropriate.
23    MR. LEVINE: Let's go off the record.
24    MR. KUCKELMAN: Okay.
25    (The deposition concluded at 10:09 a.m.)

47

| | |
|---|---|
| 1 | AND FURTHER DEPONENT SAITH NOT |
| 2 | |
| 3 | (The reading and signing of the deposition were waived by the witness and all parties.) |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |